# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### BRUNSWICK DIVISION

NATHAN P. NEWHAM,

      Petitioner,

    v.

UNITED STATES OF AMERICA,

      Defendant.

CIVIL ACTION NO.: 2:16-cv-9

(Case No.: 2:14-cr-12)

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Movant Nathan Newham ("Newham"), who is currently housed at the Federal Correctional Institution in Jesup, Georgia, has filed a Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255. (Doc. 1.) The Government filed a Response, (doc. 5). Newham filed a Supplement to his Section 2255 Motion, to which the Government responded. (Docs. 14, 16.) Newham filed a Reply. (Doc. 17.) For the reasons which follow, I **RECOMMEND** the Court **DENY in part** and **DISMISS without prejudice in part** Newham's Motion, **DIRECT** the Clerk of Court to **CLOSE** this case, and **DENY** Newham *in forma pauperis* status on appeal and a Certificate of Appealability.

## BACKGROUND

Newham was originally indicted in this Court on April 3, 2014, of participating in a conspiracy to possess fifty grams or more of a mixture of methamphetamine and quantities of cocaine and oxycodone with intent to distribute, in violation of 21 U.S.C. § 846. Indictment, United States v. Ortiz-Castillo, et al., 2:14-cr-12 (S.D. Ga. April 3, 2014), ECF No. 2. Newham was also charged with using a communication facility in furtherance of the conspiracy, in

violation of 21 U.S.C. § 843(b).  Id.  The Court appointed attorney Stephen E. Tillman to represent Newham on these charges.  On June 4, 2014, the Government filed a Superseding Indictment charging Mr. Newham with the same conspiracy charge, as well as three counts of use of a communication facility.  Superseding Indictment, United States v. Ortiz-Castillo, et al., 2:14-cr-12 (S.D. Ga. June 4, 2014), ECF No. 208.  On the conspiracy charge, Newham faced a potential sentence of not less than five nor more than forty years' imprisonment.  Penalty Certification, United States v. Ortiz-Castillo, et al., 2:14-cr-12 (S.D. Ga. June 4, 2014), ECF No. 209.

Newham and his attorney, Mr. Tillman, were able to negotiate a plea agreement with the Government whereby Newham agreed to plead guilty to Count 1 of the Superseding Indictment. The plea agreement included a provision whereby Newham waived his rights to directly appeal his conviction and sentence.  That provision stated:

> Defendant entirely waives his right to a direct appeal of his conviction.  The defendant agrees to waive his right to appeal the sentence.  The only exceptions are that the Defendant may file a direct appeal of his sentence if (1) the court enters a sentence above the statutory maximum[;] (2) the court enters a sentence above the advisory Sentencing Guidelines range found to apply by the court at sentencing; or (3) the Government appeals the sentence.  Absent those exceptions, the Defendant explicitly and irrevocably instructs his attorney not to file an appeal.

Plea Agreement, United States v. Ortiz-Castillo, et al., 2:14-cr-12 (S.D. Ga. July 7, 2014), ECF No. 416, p. 8.  Newham also waived his "right to collaterally attack his conviction and sentence on any ground and by any method, including but not limited to a 28 U.S.C. § 2255 motion[ ]" as part of his plea agreement.  Id.

Newham appeared before the Honorable Lisa Godbey Wood for his change of plea, or Rule 11, proceeding.  Chief Judge Wood addressed Newham and informed him the purpose of the hearing was to ensure that he understood the case that was pending against him, that he

understood all of the rights he was waiving or giving up by pleading guilty, and that there was a factual basis for the guilty plea. Change of Plea Hr'g Tr., <u>United States v. Ortiz-Castillo, et al.</u>, 2:14-cr-12 (S.D. Ga. Feb. 19, 2016), ECF No. 749, pp. 2–3. Chief Judge Wood inquired whether anyone had forced Newham to offer to plead guilty, and he said no one had done so and that pleading guilty was what he wanted to do. <u>Id.</u> at pp. 3–4. Chief Judge Wood told Newham that he did not have to plead guilty, and if he chose to persist in his not guilty plea, he would have the right to: a public and speedy trial by jury; a presumption of innocence during that trial; the assistance of trial counsel; see, hear, confront, and cross-examine the Government's witnesses and evidence; call witnesses on his behalf; and testify himself or remain silent. <u>Id.</u> at pp. 7–9. However, Chief Judge Wood cautioned Newham he would be waiving these rights if he pled guilty and she accepted that guilty plea. <u>Id.</u> at p. 9.

Newham stated he understood. Newham also stated he and Mr. Tillman reviewed the Indictment together, that he had had the opportunity to talk to Mr. Tillman about the facts of his case, as well as about the proposed plea agreement, and that Mr. Tillman had answered his questions in a satisfactory manner. <u>Id.</u> at pp. 10–11. Newham stated that he was satisfied with Mr. Tillman's services. <u>Id.</u> at p. 12.

Chief Judge Wood reviewed the counts of the Superseding Indictment applicable to Newham with him and the essential elements of the crimes for which he was charged and that the Government would have to prove. <u>Id.</u> at pp. 12–15. Chief Judge Wood advised Newham of the maximum sentence she could impose. <u>Id.</u> at p. 15. Moreover, Chief Judge Wood explained to Newham that, in imposing a sentence upon him, she would have to take into consideration the advisory Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553. <u>Id.</u> at p. 16.

Chief Judge Wood asked the Assistant United States Attorney ("AUSA") to summarize the provisions of the plea agreement. AUSA Carlton Bourne stated:

> Your Honor, the Government agrees not to object to a recommendation from the Probation Office that the Defendant receive a three-level reduction for acceptance of responsibility based on the timeliness of his plea and provided he truthfully admits the conduct. The Government agrees to dismiss the remaining counts of the Superseding Indictment as to this Defendant. The Government also agrees to consider whether this Defendant's cooperation with the Government qualifies as "substantial assistance" and warrants the filing of a motion for downward departure or a motion to reduce sentence.
>
> The Defendant agrees to plead guilty to the lesser included offense of Count One of the Superseding Indictment, to acknowledge at the time of the plea the truth contained in the factual basis, to pay on the date of sentencing any assessments imposed by the Court. The Defendant, if he cooperates, agrees to provide full, complete, candid, and truthful cooperation whenever called upon. The Government, in its sole discretion, will decide whether the cooperation qualifies as substantial assistance.
>
> The Defendant waives his right to appeal with only three exceptions. And the Defendant entirely waives his right to collaterally attack his conviction and sentence.

Id. at pp. 18–19. Chief Judge Wood asked Newham if AUSA Bourne's summarization of the plea agreement was consistent with the plea agreement he signed, and he stated it was. Id. at p. 19. Newham also stated he read the plea agreement, and Mr. Tillman answered any questions he may have had before he signed the agreement. Newham affirmed that no one had made him any promises regarding the outcome of his case, other than the provisions contained in the plea agreement. Id.

Chief Judge Wood then specifically addressed the direct appeal waiver with Newham:

> I want to follow up on one of the provisions that Mr. Bourne alluded to. That is, that this plea agreement that you are proposing does waive appellate rights. It states: Defendant entirely waives his right to appeal his conviction and entirely waives his right to appeal the sentence. Now there are exceptions to that waiver. That is, if one of these three events were to occur, then you would get a direct appeal right back. But otherwise, by virtue of this agreement, you waive your appellate rights. The only exceptions are, number one, if I were to sentence you

> above that statutory maximum that we talked about, you could appeal that directly; or number two, if I were to sentence you above the advisory guideline range as found by me, then you could get an appeal right back; or number three, if the Government were to file a direct appeal, then you would get a direct appeal right back. But otherwise, by virtue of this plea agreement, you waive all other direct appeal rights. Understand?

Id. at pp. 19–20. Newham stated he understood this provision. Chief Judge Wood also stated that the proposed plea agreement contained a waiver of Newham's collateral attack rights. When asked if he understood that provision, Newham stated he did not. Accordingly, Chief Judge Wood told Newham:

> That means that after your case is over and after any appellate right that might have remained has been pursued, if you were to file a separate attack on your appeal or sentence, it would fail because you have also waived the right to file such a separate attack. Understand? What it means, in essence, is pursuant to your plea agreement, you are agreeing to accept the outcome of your case unless I sentence you higher than the statutory maximum, or higher that your advisory guidelines range as found by me, or unless the Government files an appeal, and by virtue of the plea agreement, ways to attack the conviction or sentence after you are sentenced are given up.

Id. at pp. 20–21. Newham expressed his understanding of this provision and stated he had no questions about that provision. Id. at p. 21.

Chief Judge Wood then asked Newham whether he wished to still plead guilty to the lesser included offense of Count One of the Superseding Indictment because he was in fact guilty of that count, and he answered in the affirmative. Id. at pp. 21–22. Chief Judge Wood also asked Newham whether he understood the rights and privileges he was waiving if she accepted his plea, and he said he did. Chief Judge Wood determined Newham participated in the Rule 11 proceedings "knowingly", "intelligently", and "voluntarily." Id. at p. 22. Further, Chief Judge Wood determined Newham's plea was "knowing" and "voluntary". Id. at p. 20. Newham agreed. The Government provided a factual basis for Newham's plea of guilty. Id. at pp. 23–25. Mr. Tillman cross-examined Kevin Waters, the task force officer with the Drug Enforcement

Administration in Savannah who provided the Government's factual basis for the plea. Id. at p. 26.

After hearing from Newham again, during which time he agreed with the Government's factual basis, Chief Judge Wood accepted Newham's plea and adjudged him guilty of the lesser included offense of Count One of the Superseding Indictment. Id. at p. 27. Chief Judge Wood advised Newham that a Probation Officer would prepare a Presentence Investigation report ("PSI"), and the Court would schedule a sentencing hearing after the PSI was disclosed to the Government and Mr. Tillman. Id.

In the PSI, the Probation Officer attributed at least 680.4 grams of "ice" methamphetamine to Newham, which indicated a base offense level of 34, pursuant to United States Sentencing Guidelines § 2D1.1. (PSI, ¶¶ 12, 17.) The Probation Officer increased the offense level by two, pursuant to United States Sentencing Guidelines § 2D1.1(b)(1), for possession of dangerous weapons. (PSI, ¶ 18.) Newham also received a three point reduction under United States Sentencing Guidelines § 3E1.1 for accepting responsibility in a timely manner. (PSI, ¶¶ 24–26.) The Probation Officer recommended that Newham's total offense level was 33. (PSI, ¶ 26). With a criminal history of nine, his criminal history fell within category IV. (PSI, ¶ 36.) With a total offense level 33 and criminal history category IV, Newham's recommended advisory Guidelines' range was 188 to 235 months' imprisonment. (PSI, ¶ 60.) The statutory maximum term of imprisonment was 20 years. 21 U.S.C. § 846. Mr. Tillman filed no objections to the PSI but submitted additional factors for the Court to consider regarding a possible downward departure. (PSI, Addendum.) Specifically, the Probation Officer noted that Mr. Tillman had asserted that the Court should depart downward under United States Sentencing Guidelines § 5K2.0 because the sentencing range was fundamentally unjust. (Id.)

At the sentencing hearing, Chief Judge Wood asked Newham whether he had the opportunity to read and review the PSI and its addendum with his attorney. Newham answered in the affirmative. Sent. Hr'g Tr., <u>United States v. Ortiz-Castillo, et al.</u>, 2:14-cr-12 (S.D. Ga. June 20, 2015), ECF No. 673, pp. 4–5. The Court then asked whether there were any remaining objections to the accuracy of the factual statements or to the Probation Officer's application of the Sentencing Guidelines. <u>Id.</u> at p. 5. Mr. Tillman answered that Newham had no objections. <u>Id.</u>

The Government called Officer Waters to testify at the sentencing hearing in support of the Government's Section 5K1.1 motion for downward departure. Officer Waters testified that, although Newham had a "somewhat limited" place in the drug organization[1], he provided information Officer Waters considered to be truthful and accurate and was willing to cooperate with the Government. <u>Id.</u> at p. 7. After hearing from Officer Waters and the AUSA, Chief Judge Wood granted the Government's motion for downward departure. <u>Id.</u> at p. 11. Chief Judge Wood reviewed the advisory Guidelines and noted Newham's total offense level was 33 with a criminal history category of IV, which called for 188 to 235 months of imprisonment and three years' supervised release under the advisory Guidelines. <u>Id.</u> Chief Judge Wood also noted that there was no statutory minimum sentence but there was a twenty-year maximum sentence. <u>Id.</u> Mr. Tillman called Newham's mother and sister to provide testimony in mitigation of sentence, and Mr. Tillman provided argument in mitigation of sentence. <u>Id.</u> at pp. 12–22; 22–25.

---

[1] On cross-examination, Officer Waters stated Newham's position in the organization "was probably a little more significant than he wished it was. The investigation revealed that he was, in fact, a multi-ounce methamphetamine customer of Mr. Lepe-Cholico's who, in fact, did distribute methamphetamine in the Jeff Davis County area. However, regardless of his obvious addiction to the drug and possibl[y] other drugs, he still was one level below Lepe-Cholico, actually." Sent. Hr'g Tr., <u>United States v. Ortiz-Castillo, et al.</u>, 2:14-cr-12 (S.D. Ga. June 20, 2015), ECF No. 673, p. 8. Lepe-Cholico was sentenced to 180 months' imprisonment. J., <u>United States v. Ortiz-Castillo, et al.</u>, 2:14-cr-12 (S.D. Ga. Nov. 17, 2014), ECF No. 576.

After hearing from Mr. Tillman, the AUSA, Newham, and his mother and sister and having reviewed the PSI and the sentencing factors of 18 U.S.C. § 3553, Chief Judge Wood sentenced Newham to 108 months' imprisonment and three years' supervised release. Id. at p. 29; J., United States v. Ortiz-Castillo, et al., 2:14-cr-12 (S.D. Ga. Jan. 5, 2015), ECF No. 601. Chief Judge Wood remarked that she took into consideration Newham's assistance to the Government and Newham's supportive family in sentencing Newham below the Guidelines. Sent. Hr'g Tr., United States v. Ortiz-Castillo, et al., 2:14-cr-12 (S.D. Ga. June 20, 2015), ECF No. 673, p. 29. In addition, Judge Wood stated she crafted this sentence "to avoid unwarranted sentencing disparity among the codefendants." Id. Moreover, Chief Judge Wood reminded Newham of the waiver provisions contained in his plea agreement during the sentencing hearing. Specifically, Chief Judge Wood stated, "Also, pursuant to that plea agreement, with limited exceptions, [Newham] did waive the rights conferred by 18 USC (sic) Section 3742 to appeal the sentence and the right to attack the sentence collaterally in any postconviction proceeding." Id. at p. 31.

On the same date as his sentencing, Newham and Mr. Tillman executed a Post-Conviction Consultation Certificate, in which Mr. Tillman certified that he met with Newham, explained to Newham the appellate process and his rights, advised Newham of the advantages and disadvantages of filing an appeal, and asked Newham of his interest in appealing his conviction. After this consultation, Newham "decided not to file an appeal," and Mr. Tillman explained the consequences of failing to file an appeal. Notice, United States v. Ortiz-Castillo, et al., 2:14-cr-12 (S.D. Ga. Feb. 24, 2016), ECF No. 750. Newham and Tillman signed this Notice. Id. Newham did not file a direct appeal. Newham filed his timely Section 2255 Motion on January 15, 2016. (Doc. 1.)

**DISCUSSION**

In his Motion, as amended, Newham asserts Mr. Tillman rendered ineffective assistance in several respects. Primarily, Newham contends that Mr. Tillman rendered ineffective assistance at his sentencing hearing, which negatively affected his offense level and his ultimate sentence. (Docs. 1, 16, 17.) Additionally, Newham contends Mr. Tillman failed to file a direct appeal. (Doc. 1, p. 4.) Newham also claims that his family paid a company called the National Legal Professional Associates to represent him during his Section 2255 proceedings, but this company has done nothing on his behalf.

The Government responds that the collateral attack waiver contained in Newham's plea agreement bars his claims. In the alternative, the Government states that Newham's claims are without merit. (Doc. 5, p. 9.)

**I.    Whether the Collateral Waiver Provision in Newham's Plea Agreement Bars his Claims that Tillman Rendered Ineffective Assistance at Sentencing**

Newham first attacks Mr. Tillman's assistance at the sentencing phase. Specifically, Newham contends Mr. Tillman: (1) failed to object to the two point offense level enhancement under United States Sentencing Guidelines § 2D1.1(b)(1) for possession of dangerous weapons; (2) failed to ask the Court for a downward departure for his less culpable role in the conspiracy; and (3) failed to object to a disparity between his and his codefendant's sentences.

The Government maintains Newham agreed to a complete waiver of his direct appeal and collateral attack rights as part of his plea agreement. (Doc. 5, p. 9.) The Government asserts there were no exceptions to the waivers, and Newham "manifested his understanding of the waiver[s]" by signing his plea agreement. (Id.) Additionally, the Government avers the Court questioned Newham about the waivers during his change of plea hearing, and Newham declared that he understood the waivers. (Id. at p. 10.) Further, the Court instructed Newham regarding

the limited ways in which he could challenge his criminal proceedings, even after entry of his guilty plea, but none of those ways included the ability to file a Section 2255 motion. (Id.)

It is well-settled that waiver of appeal[2] and collateral attack provisions in plea agreements are enforceable if the waivers are knowing and voluntary. United States v. Johnson, 541 F.3d 1064, 1066 (11th Cir. 2008) (citing United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001)); Williams v. United States, 396 F.3d 1340, 1341 (11th Cir. 2005). "The waiver is valid if the government shows either that: (1) the district court specifically questioned the defendant about the waiver; or (2) the record makes clear that the defendant otherwise understood the full significance of the waiver." Johnson, 541 F.3d at 1066; see also Medina v. United States, 597 F. App'x 583, 586 (11th Cir. 2015) (same). "A waiver of the right to appeal includes a waiver of the right to appeal difficult or debatable legal issues—indeed, it includes a waiver of the right to appeal blatant error." United States v. Howle, 166 F.3d 1166, 1169 (11th Cir. 1999). "Waiver would be nearly meaningless if it included only those appeals that border on the frivolous." Brown v. United States, 256 F. App'x 258, 261–62 (11th Cir. 2007). Importantly to this case, "a valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing." Williams, 396 F.3d at 1342 & n.2; see also United States v. White, 307 F.3d 336, 343 (5th Cir. 2002) ("An ineffective assistance of counsel argument survives a waiver of appeal only when the claimed assistance directly affected the validity of that waiver or the plea itself."); Soto v. United States, 3:11-cv-1124-J-34MCR, 3:08-cr-204-J-34MCR, 2014 WL 2993800, at *3 (M.D. Fla. July 3,

---

[2] "Appeal" refers to the right to appeal or contest, directly or collaterally, a sentence. United States v. Bushert, 997 F.2d 1343, 1350 & n.17 (11th Cir. 1993). Case law concerning waiver of a direct appeal has also been applied to waiver of the right to collateral proceedings. Vaca-Ortiz v. United States, 320 F. Supp. 2d 1362, 1365–67 (N.D. Ga. 2004).

2014) (a court must address the merits of a Section 2255 claim of ineffective assistance of counsel if it challenges the validity of a plea, even in light of a waiver provision contained in the plea agreement).

The record clearly indicates that Newham understood the implications of entering a guilty plea, as well as the meaning of the appeal and collateral attack waiver conditions. As recounted above, the Court specifically questioned Newham regarding his appeal waiver and collateral attack waiver at the sentencing hearing. When he questioned the collateral attack waiver, Chief Judge Wood specifically addressed that provision with him. Newhan then indicated that he understood the waiver and that he agreed to the waiver as part of his plea agreement. When a defendant enters a guilty plea pursuant to Rule 11 proceedings, "there is a strong presumption that the statements made during the colloquy are true" and his plea is knowing and voluntary. United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987). Newham's Rule 11 colloquy with the Court, as well as his plea agreement, makes clear that Newham understood the full significance of the collateral attack waiver.[3]

Moreover, Newham does not claim that Mr. Tillman's alleged ineffective assistance directly affected the validity of his waiver or the plea itself. Quite the contrary, as Newham stated during his Rule 11 colloquy, Mr. Tillman reviewed the plea agreement with Newham in detail and answered any questions Newham had regarding the agreement. Change of Plea Hr'g Tr., United States v. Ortiz-Castillo, et al., 2:14-cr-12 (S.D. Ga. Feb. 19, 2016), ECF No. 749, pp. 9–11. Additionally, despite having filed numerous pleadings in this case, Newham does not contend that Mr. Tillman misadvised him regarding the collateral attack waiver or the plea

---

[3] Further, Mr. Tillman consulted with Newham regarding his desire to file an appeal following his sentence, and Newham decided not to file an appeal.

agreement itself. Thus, the collateral attack waiver is enforceable. <u>See</u> <u>Williams</u>, 396 F.3d at 1342 & n.2; <u>see also</u> <u>White</u>, 307 F.3d at 343.

Having found the collateral attack waiver to be valid, the Court turns to the question of whether the waivers cover Newham's arguments that Mr. Tillman rendered ineffective assistance at the sentencing hearing. The appeal waiver contained exceptions that allowed Newham to file a direct appeal of his sentence if the sentence exceeded the statutory maximum or if, by variance or upward departure, the sentence was higher than the advisory Sentencing Guideline range, as found by the sentencing court. Plea Agreement, <u>United States v. Ortiz-Castillo, et al.</u>, 2:14-cr-12 (S.D. Ga. July 7, 2014), ECF No. 416, p. 8. Newham's collateral attack waiver was even broader, as he waived this right to collaterally attack his conviction and sentence, including through a Section 225 motion, "on any ground and by any method." <u>Id.</u> Regardless, Newham was not sentenced to a term of imprisonment higher than the advisory Guidelines' range Chief Judge Wood found to be appropriate, nor was he sentenced above the statutory maximum sentence. Newham's sentence of 108 months' imprisonment actually fell well below the 188 to 235 months Guidelines' range, as found by Chief Judge Wood, and below the statutory maximum sentence of twenty years' imprisonment Newham could have faced. <u>See</u> 21 U.S.C. § 841(b). Thus, Newham's claims regarding Mr. Tillman's performance at the sentencing stage fall squarely within the collateral attack waiver.

For all of these reasons, the appeal and collateral attack waivers bar Newham's argument that Mr. Tillman rendered ineffective assistance at sentencing.[4] Consequently, the Court should **DENY** these claims of Newham's Motion.

---

[4] Moreover, even if Newham had not waived these arguments, they would not provide him any relief. Newham contends Mr. Tillman rendered ineffective assistance for failing to object to the firearm enhancement. (Doc. 1, p. 5; Doc. 16, pp. 1–3.) However, as the Government points out in its Response, the record contained evidence that Newham made specific references to firearms on intercepted phone

## II. Whether Tillman Rendered Ineffective Assistance of Counsel by Failing to File a Direct Appeal or Providing Deficient Advice Regarding an Appeal

Newham contends that Mr. Tillman rendered ineffective assistance of counsel, not only at

the sentencing hearing, but also by failing to file a direct appeal. In his original Motion,

Newham claimed,

> At the time of my sentencing, I instructed my attorney, Mr. Steve Tillman, that I
> would like to appeal my sentence. Mr. Tillman informed me that, in essence, if I

---

calls, and Newham offered firearms to a drug supplier for protection. (Doc. 5, p. 12 (citing PSI, ¶ 7).) Thus, it was reasonable for Mr. Tillman not to object to the application of Section 2D1.1(b)(1), and Newham cannot show that he would not have received this enhancement if Mr. Tillman had objected on this ground. Moreover, even without this enhancement, Newham's 108-month sentence still falls well below the Guidelines' range. Newham's firearm enhancement resulted in a two-point increase in his offense level. U.S.S.G. § 2D1.1(b)(1) (2014). Without this enhancement, Newham's advisory Guidelines' range for an offense level of 31 and criminal history category of IV would have been 151 to 188 months' imprisonment. Sent. Table, U.S.S.G. (2014). Therefore, Newham cannot show that Mr. Tillman's failure to object to the firearm enhancement was deficient or that the failure to object prejudiced his defense. Equally unavailing are Newham's related arguments that Mr. Tillman should have moved for a downward departure based on Newham's minor role and that he should have raised arguments regarding the issue of sentence disparity. (Doc. 16, pp. 3–7.) First, as the Addendum to the PSI demonstrates, Mr. Tillman argued for a sentence below the Guidelines' range under Section 5K2.0. Then, at the sentencing hearing, Mr. Tillman questioned Agent Waters regarding Newham's role in the conspiracy. Sent. Hr'g Tr., United States v. Ortiz-Castillo, et al., 2:14-cr-12 (S.D. Ga. June 20, 2015), ECF No. 673, pp. 8–9. Chief Judge Wood then asked a series of follow-up questions of the agent and AUSA Bourne regarding Newham's role as compared to other Defendants. Id. at pp. 9–10. Mr. Tillman's argument at sentencing emphasized "where [Newham] was in this conspiracy." Id. at pp. 22–23. The Court then sentenced Newham to serve 108 months' imprisonment, well below his Guidelines' range. Chief Judge Wood stated that she departed from the Guidelines' range, not only due to Newham's cooperation, but "also to avoid unwarranted sentencing disparity among the codefendants." Id. at p. 29. Chief Judge Wood told Newham his sentence "is where I understand the testimony places you and the relative culpability of the others that were involved in this illegal activity." Id. Indeed, all of Newham's codefendants who were convicted of the same offense—violation of 21 U.S.C. § 846—received higher sentences than Newham, including one sentence of 240 months' imprisonment. United States v. Ortiz-Castillo, et al., 2:14-cr-12 (S.D. Ga.). Thus, Newham cannot be heard to complain that Mr. Tillman failed to make arguments at sentencing regarding his role in the offense as compared to his co-conspirators, because Mr. Tillman made those arguments, and the Court granted relief on that basis. United States v. Dyer, 325 F.3d 464, 471 (3d Cir. 2003) ("While his attorney did not use the 'magic words' downward departure, he clearly was requesting such a departure.") (citing United States v. Brannan, 74 F.3d 448, 452 (3d Cir. 1996)). Even if Mr. Tillman had not pressed the issue of Newham's role in the offense and the need to avoid sentencing disparity, Newham cannot show that he was prejudiced in any way by such a deficiency. Again, the Court actually considered Newham's role in the offense, even asking questions of the testifying agent regarding that role. Moreover, the Court explicitly stated that it based Newham's sentence on his relation to his co-conspirators and that it departed downward, in part, "to avoid unwarranted sentencing disparity." See United States v. McCauley, 715 F.3d 1119, 1127 (8th Cir. 2013) (when district court has varied below Guidelines' range, it is "nearly inconceivable" that court abused its discretion in not varying downward further).

were to file an appeal I would end up with a harsher sentence. I've since learned that there are certain issues I could have pursued without breaching my plea agreement on appeal and that I could have and should have appealed without the threat of being punished. Had my attorney advised me of that fact at the time I would have filed a direct appeal. On appeal I would have raised the sentencing issues that form the heart of the grounds listed hereafter. Because my attorney misadvised me in relation to my appeal, I would like to have my appeal right reinstated.

(Doc. 1, p. 4.)[5]

As an initial matter, the Court should not rely upon Newham's direct appeal and collateral attack waiver to resolve this issue. Some courts have held that, even where a defendant knowingly entered such a "double waiver", the waiver does not preclude claims that counsel failed to follow a defendant's instructions to file a direct appeal. See Mingo v. United States, 67 F. Supp. 3d 1370, 1373 (S.D. Ga. 2014) (Section 2255 movant is entitled to evidentiary hearing to resolve factual conflict regarding his directions to his trial counsel to file direct appeal despite movant having knowingly waived appellate and collateral attack rights in plea agreement); Simmons v. United States, No. 6:11-cv-83, 2012 WL 1499469, at *1 (S.D. Ga. Apr. 23, 2012) (reinstating Section 2255 movant's time to file an appeal due to claim that counsel failed to file direct appeal despite collateral attack waiver); Roberson v. United States, No. 6:11-cv-48, 2011 WL 6032962, at *2 (S.D. Ga. Nov. 30, 2011) (same); but see Marshall v. United States, No. CR109-078, 2013 WL 772855, at *2 (S.D. Ga. Feb. 28, 2013), vacated and remanded, 592 F. App'x 919 (11th Cir. 2015) (collateral attack waiver bars Section 2255 movant from

---

[5] Newham does not reiterate this claim in his Amended Motion. (Doc. 16.) He merely claims, in conclusory fashion, that Mr. Tillman failed to appeal "the disparity in sentencing." (Id. at p. 3.) Nonetheless, in an abundance of caution, the Court addresses this claim.

collaterally attacking conviction and sentence by claiming counsel failed to pursue appeal).[6]  The

Court need not wade into this issue to resolve Newham's claims.

"The benchmark for judging any claim of ineffectiveness must be whether counsel's

conduct so undermined the proper functioning of the adversarial process that the trial cannot be

relied upon as having produced a just result."  Strickland v. Washington, 466 U.S. 668 (1984).  A

convicted defendant must meet two components to establish that counsel's assistance was so

defective as to require reversal of a conviction or sentence:

> First, the defendant must show that counsel's performance was deficient.  This
> requires showing that counsel made errors so serious that counsel was not
> functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.
> Second, the defendant must show that the deficient performance prejudiced the
> defense.  This requires showing that counsel's errors were so serious as to deprive
> the defendant of a fair trial, a trial whose result is reliable.

Strickland, 466 U.S. at 687.  "Because the [petitioner] must prove both deficiency and prejudice,

a [petitioner's] failure to prove either will be fatal to his claim."  Johnson v. Scott, 68 F.3d 106,

109 (5th Cir. 1995).  Under the Strickland test, the petitioner must initially show that counsel's

representation fell below an "objective standard of reasonableness."  Strickland, 466 U.S. at 688.

"While it need not be errorless, counsel's advice 'must be within the realm of competence

demanded of attorneys representing criminal defendants.'"  Jones v. White, 992 F.2d 1548, 1557

(11th Cir. 1993) (quoting Stano v. Dugger, 921 F.2d 1125, 1151 (11th Cir 1991)).  In making

such an evaluation, "the court should recognize that counsel is strongly presumed to have

---

[6]  In Marshall, the Honorable J. Randal Hall noted the conflict of authority within this District and the
Circuit courts on this issue.  Marshall v. United States, No. CR 109-078, 2013 WL 772855, at *2.  Thus,
Judge Hall granted the movant a certificate of appealability.  However, the Eleventh Circuit Court of
Appeals did not resolve the question because, on appeal, the Government withdrew its reliance on the
movant's collateral attack waiver.  Marshall v. United States, 592 F. App'x 919, 920 (11th Cir. 2015).  In
Gaston v. United States, 237 F. App'x 495, 496 (11th Cir. 2007), the Eleventh Circuit remanded for an
evidentiary hearing to determine whether the movant had directed his trial counsel to file a direct appeal,
even though the movant had signed a waiver of appeal as part of his plea agreement.  However, the Court
in Gaston did not indicate that the movant had signed a collateral attack waiver.

rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. The effectiveness or ineffectiveness of counsel must be evaluated by consideration of the totality of the circumstances. Stanley v. Zant, 697 F.2d 955, 962 (11th Cir.1983).

Even if counsel made an error so egregious as to be outside the broad scope of competence expected of attorneys, a movant can obtain relief only if the error caused actual prejudice. Strickland, 466 U.S. at 691–92. In order to establish actual prejudice, a petitioner must show that "there is a reasonable probability that but for the attorney's unprofessional errors, the result of the proceeding would have been different." Armstead v. Scott, 37 F.3d 202, 207 (5th Cir. 1994). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. Strickland, 466 U .S. at 694.

"Counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal . . . or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000). "Even assuming that a rational defendant would not have wanted to appeal the case, [where a defendant] expressly communicated to his attorney his desire to appeal . . .[,] Flores-Ortega mandates that the attorney conduct a specific type of consultation, informing his client about the advantages and disadvantages of appealing and making a reasonable effort to determine the client's wishes." Gomez-Diaz v. United States, 433 F.3d 788, 792 (11th Cir. 2005).

It is well-settled that an attorney's failure to file a requested notice of appeal is *per se* ineffective assistance of counsel. Flores-Ortega, 528 U.S. at 470, 483–86; Gaston, 237 F. App'x at 495. A defendant claiming ineffective assistance on that score need not demonstrate an ability

to raise meritorious issues on appeal.  <u>Flores-Ortega</u>, 528 U.S. at 477–78.  Instead, he can prove ineffective assistance by showing a "reasonable probability" that he would have timely appealed had counsel not failed to file an appeal on his behalf.  <u>Id.</u> at 484.  Further, even where a defendant has signed a waiver of direct appeal as part of his plea agreement (as Newham did in this case), he has no burden to show that the issue he would have raised on appeal falls outside of that waiver.  <u>Gaston</u>, 237 F. App'x at 497; <u>Gomez-Diaz</u>, 433 F.3d at 793.

Here, even assuming the truth of Newham's statements, Mr. Tillman did not fail to consult with Newham regarding an appeal or fail to file a requested appeal on Newham's behalf.  Newham claims that, after his sentencing, he advised Mr. Tillman that he would like to file an appeal.  (Doc. 1, p. 4.)  According to Newham, counsel then discussed his appeal with him and informed Newham of his opinion regarding the prospects of success on appeal.  Through this discussion, Mr. Tillman "conduct[ed] a specific type of consultation, informing his client about the advantages and disadvantages of appealing and making a reasonable effort to determine the client's wishes." <u>Gomez-Diaz</u>, 433 F.3d at 792.

Newham does not allege that he directed Tillman to file an appeal at the conclusion of their discussion regarding an appeal.  Indeed, the Post-Conviction Consultation Certificate, which Newman signed on June 5, 2015, reflects that Newham advised Tillman that he did <u>not</u> want to file an appeal.  Notice, <u>United States v. Ortiz-Castillo, et al.</u>, 2:14-cr-12 (S.D. Ga. Feb. 24, 2016), ECF No. 750.  Through that Notice, Mr. Tillman certified—and Newham agreed— that Mr. Tillman met with Newham, explained to Newham the appellate process and his rights to appeal his conviction and sentence, advised Newham of the advantages and disadvantages of filing an appeal, and thoroughly inquired of him about his interest in appealing.  <u>Id.</u>  After this consultation, Newham "decided not to file an appeal, and [Mr. Tillman] explained to [Newham]

the consequences of failing to do so." Id. Newham further acknowledged that "[t]hose consequences include the waiver of [Newham's] right to complain about the process that led up to [Newham's] conviction, including in the future, should [Newham] decide to seek any form of habeas corpus, 28 U.S .C. § 2255, or other judicial relief from the conviction." Id. Newham certified his agreement with these statements by printing and signing his name. Id. Newham has not denied any of the contents of this Notice or otherwise contested the validity of this Notice in any of his pleadings. Additionally, Newham has not alleged that he directed Mr. Tillman to file an appeal after signing this document, in which he states that he did not want to file an appeal. Thus, if Mr. Tillman had filed an appeal for Newham, he would have directly disregarded his client's instructions not to file an appeal.

The Notice shows that Mr. Tillman fully explained the appellate process to Newham, apprised Newham of the advantages and disadvantages of an appeal, fully informed him of the consequences of that decision (including in a Section 2255 proceedings like this), and attempted diligently to ascertain his wishes. It also shows that Newham expressly instructed Mr. Tillman not to file an appeal. In the face of nothing more than self-serving conclusions, Newham will not now be heard to declare differently. Cf. Winthrop-Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014) ("[A] prisoner has everything to gain and nothing to lose from filing a collateral attack upon his guilty plea. . . . [Consequently,] the representations of the defendant . . . constitute a formidable barrier in any subsequent collateral proceedings.") (quoting Blackledge v. Allison, 431 U.S. 63, 71–74 (1977)); Rosin v. United States, 786 F.3d 873, 878 (11th Cir. 2015) ("It is well-settled that the district court is not required to grant an evidentiary hearing when the defendant's claims are affirmatively contradicted by the record evidence, nor is a hearing required if the claims are grounded upon generalizations that are unsupported by the

record evidence."). In short, the undisputed Notice of Post-Conviction Consultation establishes Newham's informed decision not to take an appeal and thwarts Newham's conclusory claims that counsel failed to file an appeal. See Eubank v. United States, No. CR414-005, 2016 WL 750344, at *1 (S.D. Ga. Feb. 25, 2016), *report and recommendation adopted*, No. CR414-005, 2016 WL 1464578 (S.D. Ga. Apr. 13, 2016), *certificate of appealability denied*, No. 16-11933-F, 2016 WL 6246827 (11th Cir. Oct. 25, 2016) (Section 2255 motion denied wherein movant faulted her lawyer for failing to directly appeal but Notice of Post-Conviction Consultation Certification memorialized her informed decision not to take an appeal); Eason v. United States, No. CR613-007, 2014 WL 4384652, at *3 (S.D. Ga. Sept. 3, 2014), *report and recommendation adopted*, No. CR613-007, 2014 WL 4956680 (S.D. Ga. Oct. 2, 2014) (same); see also Price v. United States, No. CR614-016, 2017 WL 525869, at *4 (S.D. Ga. Feb. 8, 2017), *report and recommendation adopted*, No. CR614-016, 2017 WL 1393058 (S.D. Ga. Apr. 11, 2017) (Notice of Post-Conviction Consultation Certification and attorney's affidavit regarding same rebut Section 2255 claim that counsel neglected to apprise movant of the advantages and disadvantages of filing direct appeal).

To the extent that Newham claims that Mr. Tillman rendered ineffective assistance of counsel by giving him deficient advice regarding his chances on appeal, the Court should reject that argument. Newham has not specifically outlined any advice that Mr. Tillman gave him that was incorrect or otherwise deficient. The most that Newham has alleged is that Mr. Tillman told Newham "in essence, if I were to file an appeal I would end up with a harsher sentence." (Doc. 1, p. 4.) He continues by claiming that he has "since learned that there are certain issues I could have pursued without breaching my plea agreement on appeal and that I could have and should have appealed without the threat of being punished." Id. However, Newham does not

identify these "certain issues" or how Mr. Tillman's counsel on those issues was deficient. Newham's conclusory allegations do not suffice to allege that Mr. Tillman's advice regarding an appeal fell below an "objective standard of reasonableness." Strickland, 466 U.S. at 688.[7]

The Court may presuppose that the "certain issues" underpinning Newham's deficient advice claim are the same sentencing arguments he contends counsel should have raised before this Court: an objection to the application of the firearm enhancement under United States Sentencing Guidelines Section 2D1.1(b)(1); whether his sentence reflected his less culpable role in the conspiracy; and the alleged disparity between his and his codefendant's sentences. If Mr. Tillman advised Newham that he would not likely succeed on these issues on appeal, that advice would not have been deficient. These issues would have failed on appeal because they fall squarely within Newham's plea agreement's direct appeal waiver. See, e.g., United States v. Riviera-Solona, 531 F. App'x 986, 993 (11th Cir. 2013) (appeal waiver barred defendant's argument on direct appeal that there was insufficient evidence to support the U.S.S.G. § 2D1.1(b)(1) firearm enhancement); United States v. Dandridge, 281 F. Appx 881, 883 (11th Cir. 2008) (appeal waiver barred defendant's argument on direct appeal that district erred at sentencing by denying his request for a minimal role reduction, refusing to adjust his sentence

---

[7] It is important to note the distinctions between the above-discussed "lost appeal" claim (i.e., that Mr. Tillman failed to file an appeal) and Newham's putative "deficient advice" claim (i.e., that Mr. Tillman misadvised Newham regarding the likelihood of success on appeal). It is not clear if Newham intends to bring one or both of these claims. As to the lost appeal claim, if Newham had directed Mr. Tillman to file an appeal on his behalf and Mr. Tillman failed to do so, that would constitute *per se* ineffective assistance of counsel. Flores-Ortega, 528 U.S. at 470, 483–86. Thus, on the lost appeal claim, Newham need not demonstrate, and the Court need not assess, whether Newham could have raised meritorious issues on direct appeal. Id. at 477–78. In contrast, because the deficient advice claim questions counsel's assessment of the merits of an appeal, that claim necessarily involves the proposed grounds for appeal and their validity. On this claim, Newham would be essentially arguing that Mr. Tillman incorrectly told him that certain arguments would not succeed on appeal. Of course, to assess the correctness of counsel's advice, the Court must at the very least know what advice was given. Newham has provided no such information, much less specifically identified the grounds for appeal about which Mr. Tillman misadvised him. While Newham's failure to identify a meritorious ground for appeal would be of no moment to a "lost appeal" claim, it is fatal to his putative "deficient advice" claim.

downward in light of the disparity between his sentence and his codefendants' sentences); United States v. Cifuentes, 159 F. App'x 883, 888 (11th Cir. 2005) (appeal waiver barred defendant's argument on directed appeal that court should have granted him minor role reduction because he was less culpable than many of those involved in the conspiracy). Moreover, for the reasons pointed out in footnote four above, even if the appellate court reached Newham's sentencing arguments, the arguments would not have been meritorious. Accordingly, it would not have been objectively unreasonable for Mr. Tillman to advise Newham that his sentencing arguments would not succeed on direct appeal. Quite the contrary, as part of the "specific type of consultation" required of counsel following sentencing, it would have been proper for Mr. Tillman to honestly communicate to Newham that these arguments lacked merit. See Gomez-Diaz, 433 F.3d at 792.

Nor was it ineffective for Mr. Tillman to advise Newham that he could receive a higher sentence on remand after an appeal. When rejecting a similar argument, United States Magistrate Judge G.R. Smith of this District recently explained:

> Citing North Carolina v. Pearce, 395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed.2d 656 (1969), [the Section 2255 movant] also argued that [defense counsel] incorrectly advised [the movant] that she might face a higher sentence on remand after a successful appeal. That, she contended, constituted ineffective assistance. The law on vindictiveness (what Pearce addresses), however, does not reach so broadly.
>
> Certainly a presumption of vindictiveness arises when a prisoner successfully attacks a jury conviction and is then resentenced by the same judge after a second trial to a harsher sentence with no new evidence presented that justifies the increased prison time. See Alabama v. Smith, 490 U.S. 794, 802 (1989) (citing Pearce, 395 U.S. at 725–26, 89 S.Ct. 2072). But no such presumption attaches when, for example, a higher sentence results from a *trial* that occurs on the heels of a successfully attacked *guilty plea*. See Smith, 490 U.S. at 803. Nor is a higher sentence problematic under Pearce "when the increased sentence was imposed by the second court in a two-tiered system which gave a defendant convicted of a misdemeanor in an inferior court the right to trial *de novo* in a superior court," Smith, 490 U.S. at 800 (citing Colten v. Kentucky, 407 U.S. 104

(1972)), or when a higher sentence is imposed by a new jury (rather than a judge) after a second trial. See Chaffin v. Stynchcombe, 412 U.S. 17 (1973). Most critically, even when the original sentencing judge imposes a higher sentence after his original is overturned on appeal, the new sentence implies no vindictiveness when supported by "on-the-record, wholly logical, nonvindictive reasons." Texas v. McCullough, 475 U.S. 134,140 (1986).

When [defense counsel] told [the movant] that "she might get more time at a resentencing," then, he correctly conveyed the risks she faced and made no legal error that qualified as ineffective assistance. [The movant] very much faced a higher sentence if, upon resentencing, the district judge concluded that record evidence logically supported its imposition and no actual evidence of vindictiveness existed. See Wasman v. United States, 468 U.S. 559, 568 (1984); see also id. at 567 ("Pearce was not written with a view to protecting against the mere possibility that, once the slate is wiped clean and the prosecution begins anew, a fresh sentence may be higher for some valid reason associated with the need for flexibility and discretion in the sentencing process.").

Diaz v. United States, No. CR413-150, 2016 WL 928670, at *2 n.4 (S.D. Ga. Mar. 7, 2016), *report and recommendation rejected on other grounds*, 192 F. Supp. 3d 1374 (S.D. Ga. 2016).

For all of these reasons, the Court should **DENY** Newham's claim that Mr. Tillman rendered ineffective assistance by failing to file an appeal on his behalf and any putative claim that Mr. Tillman provided deficient advice regarding Newham's likelihood of success on appeal.

### III. Whether Newham States a Viable Claim Against National Legal Professional Associates

Newham attempts to bring a claim against National Legal Professional Associates in his Section 2255 Motion. He claims that this organization failed to assist with Newham's Section 2255 proceedings after being paid to do so by his family. However, this organization obviously did not represent Newham in his underlying criminal proceeding, and his claims have no bearing on his conviction and sentencing before this Court. Thus, any claims he has against this organization are not cognizable under Section 2255. Moreover, for numerous reasons, the Court should not construe these claims as a civil breach of contract action. See Ali v. Robinson, No. 13-C-1353, 2014 WL 805915, at *2 (E.D. Wisc. Feb. 28, 2014) (noting that, even if the plaintiff

could file a complaint that met the requirements for exercise of federal jurisdiction, plaintiff's request for reinstatement of his post-conviction appeal rights is not a remedy for breach of contract claims or a remedy available under Racketeer Influenced and Corrupt Organizations statute); Cook v. Cooper, No. 1:09-cv-101, 2011 WL 345805 (E.D. Tenn. Jan. 31, 2011) (finding plaintiff could not meet jurisdictional amount for compensatory damages in a diversity case alleging breach of contract claims); Douglas v. Ratliff, No. C-1-09-60, 2009 WL 3378672 (S.D. Ohio Oct. 20, 2009) (civil action claim alleging numerous claims in connection with a contract for legal services).[8] Thus, the Court should also **DISMISS without prejudice** Newham's putative claims against National Legal Professional Associates.

## IV. Leave to Appeal *in Forma Pauperis* and Certificate of Appealability

The Court should also deny Newham leave to appeal *in forma pauperis*. Though Newham has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed"). An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit

---

[8]  These three cases each involved a plaintiff's civil suit against National Legal Professional Associates.

either in law or fact." <u>Napier v. Preslicka</u>, 314 F.3d 528, 531 (11th Cir. 2002); <u>see also</u> <u>Brown v.</u> <u>United States</u>, Nos. 407CV085, 403CR001, 2009 WL 307872, at \*1–2 (S.D. Ga. Feb. 9, 2009).

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a certificate of appealability is issued. Pursuant to Rule 11 of the Rules Governing Section 2255 cases, the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue only if the applicant makes a substantial showing of a denial of a constitutional right. The decision to issue a certificate of appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003). In order to obtain a certificate of appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Id.</u> "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." <u>Slack v.</u> <u>McDaniel</u>, 529 U.S. 473, 484 (2000); <u>see also</u> <u>Franklin v. Hightower</u>, 215 F.3d 1196, 1199 (11th Cir. 2000). "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." <u>Miller-El</u>, 537 U.S. at 336.

Based on the above analysis of Newham's Motion, as supplemented, and the Government's Response and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appeal; therefore, the Court should **DENY** the issuance of a Certificate of Appealability. If the Court adopts this recommendation and denies Newham a Certificate of Appealability, Newham is advised that he "may not appeal

the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing Section 2255 Cases in the United States District Courts. Furthermore, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, the Court should likewise **DENY** *in forma pauperis* status on appeal.

**CONCLUSION**

Based on the foregoing, I **RECOMMEND** that the Court **DENY in part** and **DISMISS without prejudice in part** Newham's Motion and **DIRECT** the Clerk of Court to **CLOSE** this case. I also **RECOMMEND** the Court **DENY** Newham *in forma pauperis* status on appeal and **DENY** Newham a Certificate of Appealability.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A

party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Newham and the United States Attorney for the Southern District of Georgia.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 5th day of May, 2017.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA